**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DG VAULT, LLC.,<br><br>                Plaintiff,<br><br>     v.<br><br>WILLIAM DUNNE, *et al.*,<br><br>                Defendants. | Civil Action No. 18-14152 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendants William Dunne ("William"), Kyle Dunne ("Kyle"), and ArcoInfo, Inc.'s ("Arco") (collectively, "Defendants") motion to partially dismiss DGVault, LLC's ("Plaintiff") Complaint for lack of personal jurisdiction, improper venue, and for failure to meet the particularity requirements of Federal Rule of Civil Procedure 9(b). (D.E. No. 23). In the alternative, Defendants ask the Court to transfer this matter to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404. (*Id.*). Plaintiff opposed the motion (D.E. No. 24), and Defendants replied (D.E. No. 26). The Court has reviewed the parties' submissions and decides this motion without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, the Court will transfer this matter to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

**I.    Background**

On May 8, 2017, Plaintiff and DGV Acquisition LLC ("DGVA") executed an Asset Purchase Agreement ("APA"). (D.E. No. 13 ("Am. Compl.") ¶ 2). Plaintiff is a Delaware limited liability company and its principal place of business is in Edison, New Jersey. (*Id.* ¶ 4). DGVA is a Texas limited liability company, and as of May 2017 its principal place of business is in

1

Poinciana, Florida. (D.E. No. 23-2 ¶ 9). William, as one of the owners of DGVA, was an individual signatory to the APA. (*Id.* ¶ 16). The APA memorialized the sale of certain assets of DGVA to Plaintiff, including customer lists and customer accounts. (Am. Compl. ¶ 17). One of these accounts was a contract with a customer named MCCi, a Florida company. (*See id.* ¶¶ 28 & 30; D.E. No. 2-2 at 28 (CM/ECF Pagination)). Moreover, the APA contains a New York choice of law provision. (D.E. No. 2-2 at 22 (CM/ECF Pagination)).

It appears that some of the negotiations leading up to the APA occurred in New Jersey (*see* D.E. No. 24-1 ¶ 3), although it is unclear where the APA was executed or whether any performance occurred in New Jersey. Moreover, at the time the APA was being negotiated, William lived in Lombard, Illinois, while when the APA was signed he lived in Poinciana, Florida, where he still resides today. (D.E. No. 23-2 ¶ 8).

In any event, William personally agreed that as of May 8, 2017, and for five years thereafter, he would not engage in a competing business, as defined by the APA. (*See* Am. Compl. ¶¶ 2 & 20). William also agreed not to solicit or do competing business with Plaintiff's customers, particularly the customers sold through the APA. (*Id.* ¶¶ 2 & 26).

After singing the APA, William became an outside salesperson for Plaintiff and Plaintiff's parent company. (*See id.* ¶¶ 34–36 & 84). As part of his employment, he was tasked with traveling to customer sites, introducing customers to the acquiring company, transitioning and facilitating those relationships, and making sales for Plaintiff until his retirement. (*Id.* ¶ 34). William held this position until his termination on June 28, 2018. (*Id.* ¶ 36).

Concurrently, William's son, Kyle, also became an employee of Plaintiff. (*Id.* ¶ 40; D.E. No. 23-4 ¶ 2). From May 2017 through September 2017, Kyle worked at Plaintiff's office in Carol, Illinois. (D.E. No. 23-4 ¶ 3). In September 2017, Kyle began to work at Plaintiff's office in Tampa, Florida, where he remained until his termination on August 15, 2018. (*Id.*). Kyle has

lived in Wesley Chapel, Florida, since September 2017. (*Id.* ¶ 4). Notably, Kyle has been in New Jersey only once; in May 2017 when he traveled to Plaintiff's office in Carlstadt, New Jersey, for five days as part of his work duties. (*Id.* ¶ 5). Moreover, from December 20, 2017, through his termination, Kyle's responsibilities were limited to Plaintiff's business in Florida. (*Id.* ¶¶ 7 & 8).

Plaintiff alleges that during his employment, William operated certain entities (including Sri IIST, Inc; Digital Concepts Org. LLC[1]; and DGVA) to conduct imaging work for Plaintiff's customers, in violation of the APA. For instance, Plaintiff alleges that William was listed on Sri IIST's website as its president and CEO, and that between July 2017 and the Spring of 2018, William used a Sri IIST email address to email certain customers, including MCCi. (Am. Compl. ¶¶ 46–47). Plaintiff also asserts that William steered imaging jobs away from Plaintiff to Digital Concepts and DGVA. (*Id.* ¶¶ 49 & 51–52). Specifically, Plaintiff asserts that William used these entities to provide services to MCCi. (*Id.* ¶¶ 46–52). The undisputed record reflects that this work was performed in Texas; the invoices to MCCi were prepared by William in his home-office in Poinciana, Florida, and sent to MCCi's office in Tallahassee, Florida; and William received all payments at his home-office in Poinciana, Florida. (D.E. No. 23-2 ¶ 14). Thus, none of this activity occurred in New Jersey.

Plaintiff also contends that on January 17, 2018, William incorporated Defendant Arco. (Am. Compl. ¶ 57). Arco is a Delaware limited liability company with a principal place of business in New York. (D.E. No. 23-2 ¶ 3). William is Arco's president, and he works for Arco out of his home-office in Poinciana, Florida. (*Id.* ¶ 2). Kyle also works for Arco out of his home in Wesley Chapel, Florida. (D.E. No. 23-4 ¶ 11). Additionally, in the form registering Arco to do business in New York, William instructed the New York Department of State to mail service of process to

---

[1] Digital Concepts is a Florida limited liability company with a principal place of business in Poinciana, Florida. (D.E. No. 23-2 ¶ 13).

3

his home address in Poinciana, Florida. (Am. Compl. ¶ 58).

Plaintiff alleges that in August and September 2018, William and Kyle exchanged emails with certain individuals about soliciting business for Arco from customers covered by the APA, including Tech Pro Solutions. (Am. Compl. ¶¶ 60–61). The undisputed record reflects that these emails originated in Florida, and none of the participants and customers identified in those emails are located in New Jersey. (*See* D.E. No. 23-2 ¶ 7). Moreover, the undisputed record shows that Arco has no clients or office in New Jersey, and that since its inception it has had only two clients: one in Wilmington, North Carolina, and another in Tampa, Florida. (*Id.* ¶ 6).

Based on these allegations, Plaintiff's Amended Complaint asserts five counts: Count I – breach of contract against William; Count II – breach of loyalty against William and Kyle; Count III – fraud against William; Count IV – tortious interference with contractual relationship against William; and Count V – tortious interference with contractual relationship against Kyle and Arco. (Am. Compl. ¶¶ 77–111).

## II.     Legal Standard

While "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). Accordingly, the Court addresses the venue issue first, and because Defendants have demonstrated that a transfer of venue is appropriate under Section 1404(a), the Court does not reach the other questions raised by Defendants' motion.

Section 1404(a) permits a district court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer an action to another district "where it might have been brought." 28 U.S.C. § 1404(a)). Section 1404(a) exists to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."

*Kremer v. Lysich*, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (citations and internal quotation marks omitted). The Third Circuit has recognized that the moving party bears the burden of establishing the need for transferring the case "with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir.1973).

In determining whether transfer is appropriate under Section 1404(a), the Court must first determine whether (i) venue is proper in the transferee district, and (ii) the transferee district can exercise personal jurisdiction over all parties. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). If venue and jurisdiction in the requested district is proper, then the Court must analyze a series of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

### III. Analysis

Defendants move to transfer this matter to the Middle District of Florida. (D.E. No. 23-1 at 21). As outlined below, the Court finds that this action could have been brought in the Middle District of Florida, and "on balance the litigation would more conveniently proceed and the interests of justice be better served" by transfer to that district. *See Jumara*, 55 F.3d at 879.

#### A. The Action Could Have Been Brought in the Middle District of Florida

The Court finds that the Middle District of Florida has personal jurisdiction over Defendants and that venue is proper there pursuant to 28 U.S.C. § 1391(b)(1). Under Section 1391(b)(1), a civil action may be brought in a district "in which any defendant resides, if all defendants are residents of the State in which the district is located."

Here, William and Kyle reside within the Middle District of Florida, and indeed resided

there at all relevant times of this action. (Am. Compl. ¶¶ 5 & 6; D.E. No. 23-2 ¶ 2; D.E. No. 23-4 ¶ 4). Accordingly, William and Kyle are both subject to general personal jurisdiction in Florida and venue is proper within the Middle District of Florida.

Similarly, the claims against Arco could have been brought in the Middle District of Florida. Particularly, an entity is deemed to reside for venue purposes where it is subject to personal jurisdiction with respect to the civil action in question. 28 U.S.C. §1391(c)(2). In this case, the Middle District of Florida has specific personal jurisdiction over Arco. Specific jurisdiction arises from "an affiliation between the forum and the underlying controversy," and a district court exercising specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For specific jurisdiction to exist, a district court must determine that (i) the defendant "purposefully directed its activities at the forum," (ii) the litigation "arises out of or relates to at least one of those activities," and (iii) the exercise of jurisdiction would "otherwise comport with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up).

Here, the activity giving rise to the claims against Arco was purposefully directed at Florida. For instance, both William and Kyle work on behalf of Arco out of their Florida homes. (D.E. No. 23-2 ¶ 2; D.E. No. 23-4 ¶ 11). Indeed, William directed that service of process for Arco be mailed to his Florida address. (Am. Compl. ¶ 58). Additionally, both William and Kyle, acting on behalf of Arco, allegedly exchanged emails from Florida in order to solicit Plaintiff's customers, none of which are located in New Jersey. (*See id.* ¶¶ 60–62; D.E. No. 23-2 ¶ 7). Accordingly, Arco purposefully directed its activity at Florida, the litigation against Arco arises out of this very activity, and the exercise of jurisdiction would otherwise comport with fair play

6

and substantial justice. And because the Middle District of Florida has personal jurisdiction over Arco with respect to this action, venue is proper there as well. *See* 28 U.S.C. §1391(b)(1) & (c)(2).

In short, all Defendants reside in the Middle District of Florida for venue purposes, and that court has personal jurisdiction over them. Therefore, this action could have, and probably should have, been brought in that forum.

### B. The Public and Private Factors Favor Transfer

Having decided that venue is proper in the transferee district, the Court must next analyze whether the private and public interests factors favor transferring this case. As outlined below, the overall balancing of the factors favors transfer.

#### 1. The Private Factors

The private interest factors include: (i) plaintiff's choice of forum; (ii) defendant's preference; (iii) where the claim arose; (iv) the parties' convenience as indicated by their relative physical and financial condition; (v) the witnesses' convenience; and (vi) the location of books and records. *See Jumara*, 55 F.3d at 879.

***The Parties' Choice of Fora and the Location Where the Claims Arose***. The first three factors weigh strongly in favor of transfer. While generally a plaintiff's choice of forum is considered presumably correct, courts afford a plaintiff's choice substantially less weight when the central facts of the lawsuit occurred outside that forum state. *Kremer*, 2019 WL 3423434, at *4; *Nat'l Prop. Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) (holding that a plaintiff's choice of venue is not "decisive," and that the choice is accorded less deference "when the central facts of a lawsuit occur outside of the chosen forum").

Here, although some of the negotiations regarding the APA apparently occurred in New Jersey (*see* D.E. No. 24-1 ¶ 3), by and large the rest of the complained-of events or omissions giving rise to the claims occurred outside of this forum. For instance, William resided in Illinois

7

during the time when the APA was being negotiated, and he lived in Poinciana, Florida, when the APA was signed.  (D.E. No. 23-2 ¶ 8).  Plaintiff offers no evidence that the APA was actually executed, performed, or even breached in New Jersey.  (*See generally* D.E. Nos. 24 & 24-1).

Rather, the alleged breach of the APA, the breach of loyalty, and tortious interference claims arise out of events and omissions occurring outside of New Jersey.  For instance, William allegedly controlled other entities (such as Digital Concepts, DGVA, and Sri IIST) out of his Florida home to perform services for MCCi in Texas, then prepared the invoices for these services in his Florida home, and ultimately received payment there.  (Am. Compl. ¶¶ 37–38, 47 & 50–52; D.E. No. 23-2 ¶¶ 13–14).

With respect to William and Kyle's alleged scheme to solicit business for Arco from Plaintiff's clients, the record reflects that this activity originated in Florida and never actually interfered with any clients in New Jersey.  (Am. Compl. ¶¶ 61–63; D.E. No. 23-2 ¶ 7).  Additionally, Arco has no office or clients in New Jersey.  (D.E. No. 23-2 ¶ 6).  In fact, Plaintiff does not allege that Defendants have contacted any clients in New Jersey.  (*See generally* Am. Compl.).  Furthermore, aside from a single visit to New Jersey in 2017—which is completely unconnected to the claims at issue—Kyle worked at Plaintiff's office in Tampa, Florida, and has worked from his Florida home since his termination.  (D.E. No. 23-4 ¶¶ 3–5).

Therefore, the events or omissions giving rise to the claims at issue occurred outside of New Jersey, and relate to property and persons located outside of New Jersey.  As such, it is highly questionable whether venue is proper in this district at all, since it appears that much of the conduct at issue occurred in the Middle District of Florida.  *See, e.g.*, *Kremer*, 2019 WL 3423434, at *4.

Moreover, there are serious questions whether this Court has personal jurisdiction over all Defendants.  For instance, the individual Defendants reside in Florida, while Arco is a Delaware company with a principal place of business in New York.  (D.E. No. 23-2 ¶¶ 2–3 & 8; D.E. No.

23-4 ¶¶ 3–4). With respect to Arco and Kyle, the record reflects that they have little to no contacts with New Jersey related to this action, they maintain no bank accounts, have no property, and have no clients in New Jersey. (D.E. No. 23-2 ¶¶ 6–7; D.E. No. 23-4 ¶¶ 5–9 & 12). Furthermore, the Court is doubtful that Plaintiff has met its burden to show that Kyle and Arco purposefully directed their activities at New Jersey and that the claims at issue arise out of or relate to at least one of those activities. *See O'Connor*, 496 F.3d at 317. In particular, the factual basis of the claims against Kyle and Arco revolve around activity undertaken by Defendants in Florida, which was not in any way directed at New Jersey. (*See* Am. Compl. ¶¶ 42–44 & 60–61 & 107–11; D.E. No. 23-2 ¶ 7; D.E. No. 23-4 ¶ 4).

By contrast, Plaintiff offers only assertions regarding certain communications Kyle had with individuals in New Jersey (D.E. No. 24-1 ¶¶ 5; D.E. No. 24-2 ¶¶ 6–9), and about a meeting William arranged between representatives of Plaintiff and Arco "for the purpose of potentially doing business together" (Am. Compl. ¶¶ 14 & 55–56; D.E. No. 24-1 ¶¶ 10–11). But all these contacts are completely unrelated to the claims at issue, and accordingly, cannot form the basis for this Court to exercise personal jurisdiction over Arco and Kyle. *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *see also Dialight Corp. v. Allen*, No. 15-1090, 2015 WL 5996287, at *3 n.4 (D.N.J. Oct. 14, 2015) ("Finally, this Court cannot exercise *Calder* jurisdiction over Defendant because all of his alleged tortious activities, such as interfering with Potyk's confidentiality agreement and using confidential information to engage in unfair competition with Plaintiff in Texas, were not 'targeted' at New Jersey and will only be indirectly felt by Plaintiff in New Jersey by virtue of its principal place of business being located in this state.").

In short, New Jersey has little connection with the operative facts of this case, while it

appears that many of the events and omissions giving rise to the claims originated in the Middle District of Florida. Coupled with the very serious personal jurisdiction questions at issue, the Court finds that the first three factors strongly weigh in favor of transfer.

*The Convenience of the Parties*. Plaintiff's business generates tens of millions of dollars in revenue a year. (D.E. No. 10-1 ¶ 4; D.E. No. 23-2 ¶ 15). Additionally, Plaintiff has an office in Tampa, Florida (in the Middle District of Florida), where Kyle worked until his termination and to where Plaintiff's employees and management regularly travel. (D.E. No. 23-2 ¶ 20; D.E. No. 23-4 ¶ 3). By contrast, the record reflects that Defendants' financial condition is much more precarious. Arco has had only two clients and its gross receipts for 2018 were less than $10,000. (D.E. No. 24-2 ¶ 6). Kyle's gross income for 2018 was less than $100,000 (D.E. No. 24-4 ¶ 10), while William is 67 years old and lives predominately on Social Security benefits. (D.E. No. 10-1 ¶¶ 5–6; D.E. No. 24-2 ¶¶ 16–18). Moreover, all Defendants reside within the Middle District of Florida for venue purposes. Accordingly, the convenience of the parties as indicated by their location and relative financial condition favors transfer to the Middle District of Florida.

*The Convenience of Witnesses*. This factor applies only to the extent that there are witnesses who may actually be unavailable for trial in one of the fora. *Jumara*, 55 F.3d at 879. On this record, the Court cannot find that the Middle District of Florida is inconvenient to Plaintiff's witnesses: Plaintiff is registered to do business in Florida, an office in Tampa, and its employees and management regularly travel to Florida on business. (D.E. No. 23-2 ¶ 20; D.E. No. 23-4 ¶ 3). Plaintiff contends, without providing any support, that many of its witnesses are in New Jersey. (D.E. No. 24 at 13). Even if true, whether this case is litigated in Florida or in New Jersey, non-party witnesses will inevitably be inconvenienced. Accordingly, the Court finds that this factor does not weigh for or against transfer.

*Availability of Books and Records*. This factor applies only to the extent that the files

could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879. The relevant records may presumably be produced in either forum, and accordingly, the Court finds that this factor is also neutral. *See Culp v. NFL Prods. LLC*, No. 13-7815, 2014 WL 4828189, at *7 (D.N.J. Sept. 29, 2014) ("In our electronic age, this factor seems to carry less consideration [because books and records] are already in electronic format or can be saved electronically, and easily transported.").

Accordingly, the balance of the private factors favor transfer to Florida.

### 2. The Public Factors

The public interest factors include: (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty arising from court congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable law. *See Jumara*, 55 F.3d at 879–80. When evaluating the public interest factors "the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988) (citations and internal quotation marks omitted).

With respect to the first factor, Defendants have no bank account, financial holdings, or property in New Jersey. (D.E. No. 23-2 ¶¶ 18–19; D.E. No. 23-4 ¶ 9). However, "when both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *See* Moore's Federal Practice – Civil § 111.13 (citing *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 450 (W.D.N.C. 1989)). Accordingly, the Court finds that this factor is neutral.

However, as outlined above, the majority of the events and omissions giving rise to the claims at issue occurred in Florida, not New Jersey. Accordingly, Florida has a stronger local

interest than New Jersey in adjudicating this matter. *See Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 576 (D.N.J. 2000) ("Because a substantial amount, if not all, of the alleged culpable conduct occurred in Washington, not New Jersey, Washington has a stronger public interest in adjudicating this dispute."). Florida similarly has a stronger local interest because the "burden of jury duty ought not to be imposed upon the people of a community which have no relation to the litigation." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 526 (D.N.J. 1998) (quotations omitted); *cf. Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 478 (D.N.J. 1993) ("New Jersey jurors should not be burdened with adjudicating a matter . . . . stemming from conduct which is/was largely localized in Minnesota and Illinois").

In addition, Florida may be in a position to more quickly and efficiently adjudicate this matter than New Jersey. For instance, during the 12-month period ending September 30, 2018, the Middle District of Florida had 628 "weighted filings per authorized judgeship," while the District of New Jersey had 1,012.[2] By March 31, 2019, this number had increased to 1,066 weighted filings per judgeship in New Jersey.[3] Moreover, as of December 31, 2018, New Jersey had over 24,074 pending cases, whereas the Middle District of Florida had just 6,294.[4] Furthermore, the District of New Jersey currently has six judicial vacancies with no pending nominations, while the Middle District of Florida has just one vacancy.[5] Inevitably then, this

---

[2] U.S. District Courts—Weighted and Unweighted Filings per Authorized Judgeship—During the 12-Month Periods Ending September 30, 2017 and 2018, USCOURTS.GOV, https://www.uscourts.gov/sites/default/files/data_tables/jb_x1a_0930.2018.pdf (last visited Dec. 30, 2019).

[3] Congressional Research Service, *Recent Recommendations by the Judicial Conference for New U.S. Circuit and District Court Judgeships: Overview and Analysis*, at 19 fig. 3, (Sept. 3, 2019), available at https://crsreports.congress.gov/product/pdf/R/R45899.

[4] U.S. Courts, Civil Statistical Tables For The Federal Judiciary (December 31, 2018), USCOURTS.GOV, https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2018/12/31 (last visited Dec. 30, 2019).

[5] Current Judicial Vacancies, USCOURTS.GOV, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last updated Dec. 29, 2019).

District is far more congested than Defendants' preferred forum, which inevitably makes litigation here far less expeditious. It therefore appears very likely that transfer to the Middle District of Florida may shorten the time to resolution of this matter. *See, e.g.*, *Kremer*, 2019 WL 3423434, at *6 ("The relative congestion of dockets in the two districts suggests that in the Middle District of Florida this action is likely to proceed to trial, or otherwise reach its resolution, more quickly than in this Court.").

Finally, the public interest in conserving judicial resources also makes transfer appropriate. Whether this Court has personal jurisdiction over the claims against Kyle and Arco, and whether venue over any of Plaintiff's claims even lies in this District are in doubt, presenting difficult factual and legal questions. As outlined above, neither of these questions would exist in Florida, and thus transfer there obviates the need for the parties and the Court to needlessly waste limited resources. *See e.g., Multistate Legal Studies, Inc. v. Marino*, No. 96-5118, 1996 WL 786124, at *11 (C.D. Cal. Nov. 4, 1996) (collecting cases); *Auto-Wares, LLC v. Wis. River Co-op Servs.*, No. 09-0702, 2010 WL 2508356, at *3 (W.D. Mich. June 17, 2010).

The remaining factors do not change this conclusion, and at worst weigh neutrally. *See, e.g.*, *Kremer*, 2019 WL 3423434, at *7. Accordingly, the Court finds that the overall balancing of the private and public factors, and the interest of justice, strongly favor transfer of this matter to the Middle District of Florida.

**IV. Conclusion**

For the reasons stated above, Defendants' motion to transfer venue to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) is GRANTED. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**